IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v. 21-cr-118

BRANDON KIDDER,

Defendant.

---

**GOVERNMENT'S RESPONSE TO THE DEFENDANT'S SENTENCING MEMORANDUM**

**THE UNITED STATES OF AMERICA**, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorney, respectfully files this response in opposition to the defendant's sentencing memorandum (Docket No. 67). The government requests that the Court impose a guideline-range sentence in this case.

**PRELIMINARY STATEMENT**

Nelson Mandela opined that "[t]here can be no keener revelation of a society's soul than the way in which it treats its children." *See United States v. Cunningham*, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010). This case, and the myriad others like it plaguing our courts, make it clear that "we are living in a country that is losing its soul." *Id.*

Indeed, in this case, the defendant possessed the most depraved, vile, and gruesome child pornography to exist. Child pornography depicting newborn babies defiled in unspeakable ways while the infants scream from the unrelenting pain and torture. Child pornography emphasizing infants being brutalized and penetrated in various and violent ways. Images whose descriptions alone trigger horror, disgust, and repulsion. Although the

defendant did not participate in the production of such images, he undoubtedly perpetuated a market dedicated to ruining the lives of thousands and thousands of children worldwide. For the defendant's role, a guideline sentence of 78 to 97 months — a sentence that falls far below the statutory maximum of 240 months.

## PROCEDURAL HISTORY

On March 5, 2020, law enforcement arrested the defendant pursuant to a criminal complaint. *See* Docket No. 1. Judge McCarthy detained the defendant (*see* Docket No. 3) and ordered a competency evaluation, to include assessment for an insanity defense (*see* Docket No. 10). Dr. Robin Watkins conducted the competency evaluation at the Metropolitan Correction Center in Chicago. *See* Exhibit A (Dr. Watkins Competency Evaluation Report). The report deemed the defendant competent to proceed and sane for purposes of raising any insanity defense.

On August 9, 2021, the defendant waived indictment pleaded guilty to a one-count information for possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and 2252A(a)(b)(2). *See* Docket Nos. 52-55. Pursuant to the plea agreement, the defendant's guidelines range is 78 to 97 months imprisonment. On January 23, 2022, as part of the defendant's sentencing memorandum, defense counsel submitted a forensic presentence evaluation conducted by Dr. Ana Cervantes. *See* Docket No. 67, Attachment 1.

## FACTUAL BACKGROUND

The government concurs with and relies upon the statement of facts outlined in the Presentence Investigative Report ("PSR").

## ARGUMENT

### I. THIS COURT SHOULD SENTENCE DEFENDANT TO A GUIDELINE SENTENCE PURSUANT TO 18 U.S.C. § 3553.

The United States recognizes that *United States v. Booker*, 543 U.S. 220 (2005), rendered the sentencing guidelines advisory rather than statutorily mandated. When imposing a sentence, however, the Court must consider the guidelines, but must fashion a sentence that is consistent with the factors detailed in 18 U.S.C. § 3553(a). As noted by the Supreme Court, the guidelines have a "real and pervasive effect . . . on sentencing" and therefore, "are not only the starting point for most federal sentencing proceedings but also the lodestar." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016). The United States contends that a sentence of 78 to 97 months, which is the advisory guideline range, is reasonable and appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).

Under Section 3553(a), the sentence imposed must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. *See United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) ("In calibrating our review for reasonableness, we will continue to seek guidance from the considered judgment of the Sentencing Commission as expressed in the Sentencing Guidelines and authorized by Congress . . . . It bears noting that the Sentencing Commission is an expert agency whose statutory charge mirrors the § 3553(a) factors that the district courts are required to consider."). The sentencing court must also consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Based on the § 3553(a) factors, as set forth below, the government respectfully submits that a guideline sentence of imprisonment is warranted.

**A. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE WARRANT A GUIDELINE SENTENCE.**

The Court should sentence the defendant to a guideline-range sentence based on the nature and circumstances of the offense. Although the defendant wholly ignores the nature and circumstances of his offense in his sentencing memorandum, the Court must consider this factor under 18 U.S.C. § 3553(a). On January 28, 2020, the defendant admitted to law enforcement that he had been "messing around on the dark net" for the past few years. *See* Docket No. 9 at 7. After learning from friends that the Tor software concealed illegal activity, the defendant downloaded Tor software to his computer and a phone to, *inter alia*, download child pornography. *See* Exhibit A 23. During his competency evaluation, the defendant reported that the dark web "seemed like this amazing," which stoked his curiosity. Eventually, the defendant "overcame [his] curiosity to see what it was" and "found a way on[to the dark web] by downloading Tor. *See id.* The defendant stated he "stumbled upon some bad websites and clicked 'download.'" *See id.*

One such website involved "Hurtcore" child pornography. As described in the criminal complaint, Hurtcore refers to violent pornography. The target website featured the following message:

> Rules are simple all material must be related to Hurtcore content. What is Hurtcore content? It is rape, fighting, wrestling, bondage, spanking, pain, mutilation, gore, dead bodies, and etc. (no limits) Why does this place exist? There was a need and since society thinks I am worst[*sic*] than any abuser or creator of Hurtcore content, I decided to create this place for those who like it and want to share. Besides I am the mischievous god. It is up to you to make this the best Hurtcore board there is. So please upload whatever you can so that it can be shared.

The website featured posts containing images and/ or videos depicting child pornography and child erotica of prepubescent males, females, toddlers, and infants; including those depicting

anal, vaginal, and oral penetration. Additionally, these sections revealed numerous posts containing images and/ or videos depicting child pornography involving gore and sometimes death. When law enforcement asked the defendant about the target website, he recognized the name and stated that he last downloaded a large file containing child pornography from Tor a week before the search warrant.

The defendant admitted to law enforcement that he downloaded and viewed child pornography. *See* Docket No. 9 at 8-9. The defendant also admitted to masturbating to the child pornography. *See* Docket No. 9 at 9. Although he kept some files, he also admitted to viewing and deleting files regularly – particularly the most gruesome files. *See* Exhibit A at 23. In all, law enforcement identified approximately 14,356 pictures and 438 videos of child pornography across the defendant's devices. The National Center for Missing and Exploited Children analyzed the pictures and videos, identifying approximately 177 child pornography series. As reflected in the PSR, "some of the images were of children being raped, sexually assaulted, and sexually exploited." In addition, "some of the aforementioned images possessed by the defendant contained sadistic or masochistic conduct or other depictions of sexual violence." "The overall content of the images and/or videos possessed by the defendant is described as infant/toddler rape, and ejaculating into mouths and vaginas of babies."

As reflected above, the defendant possessed the very worst of child pornography. The defendant reported feeling sickened by certain of the materials, but continued to view the subject matter and delete the files after. In fact, the defendant admitted that "[t]here's a lot of that [infant themed child pornography]. What they have on my computer is nowhere near what the defendant viewed in total." Exhibit A at 23..

The nature and circumstances of this offense reveal that the defendant made a concerted effort to seek out child pornography (and other materials) on the dark web by downloading Tor, which requires several steps. Over the course of three years, he then downloaded, viewed, and masturbated to thousands and thousands of images of child pornography. In other words, he was sexually aroused by the images he viewed — so much so that the sexually gratified himself. Throughout that time, the defendant took steps to conceal his activity — by deleting the worst of files, while setting aside more "palatable" files depicting children between the age of 13 and 19. Put simply, the defendant did not just stumble upon child pornography on one occasion and look away in horror never to return. Instead, despite knowing his conduct was wrong, he continued to consume adject depravity for his own sexual satiation.

The defendant contends that he has never reached out to or acted on his urges with a real child. In so arguing, the defendant misses the point that he is treated accordingly with respect to the guidelines. Had he received, distributed, or produced child pornography, the defendant would face more onerous penalties. To be clear, however, that he did not commit a more egregious crime does not entitle the defendant to a non-guideline sentence (particularly a non-custodial sentence). The possession of child pornography is an insidious offense that unequivocally impacts thousands upon thousands of children every day. Without possessors, there would be no market for child pornography, rendering possession a critical factor in the continued existence of child pornography.

Although not raised by the defendant, *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010), does not compel a different result. In *Dorvee*, the Second Circuit noted that § 2G2.2 is an "eccentric Guideline of highly unusual provenance which, unless carefully applied, can

easily generate unreasonable results." Yet, even in light of the concerns raised in *Dorvee*, as well as *United States v. Tutty*, 612 F.3d 128 (2d Cir. 2010), a guideline sentence in the present case of 78 months to 97 months, which is well below the 240-month statutory maximum, is appropriate. This is not the run of the mill case where the enhancements are applied by happenstance. Indeed, there can be no argument in this case that the enhancements, such as age of the victims and nature of images, are not appropriately applied.

While "we do not presume that such sentences are reasonable," *Dorvee*, 616 F.3d at 183, "[w]e recognize that in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006). Furthermore, the Second Circuit has upheld numerous sentences that are comparable to this defendant's for similar conduct. *See, e.g.*, *United States v. Braden*, No. 18-3080-CR, 2019 WL 6271539 (2d Cir. Nov. 25, 2019) (upholding 97-month sentence for receipt and possession of child pornography); *United States v. Escobosa,* No. 17-3162, 2019 WL 5294964 at *2, (2d Cir. October 18, 2019) (rejecting substantive reasonableness challenge to an 87-month sentence for possession of child pornography); *United States v. Hagerman*, 506 F. App'x 14, 17-18 (2d Cir. 2012) (noting that the defendant was not sentenced to the statutory maximum and upholding a 97-month sentence for receipt and possession of child pornography where the defendant had no prior criminal history, was a victim of sexual abuse, had never sexually abused a minor, and where a psychological evaluation concluded "he poses only a low to moderate risk of reoffending"); *United States v. Chow*, 441 F. App'x 44, 46 (2d Cir. 2011) (upholding 84-month sentence for attempted receipt and possession of child pornography). Thus, a guideline sentence is this case would not be "shockingly high nor would it fall outside the broad range

of sentences that would be reasonable in the particular circumstance." *Braden*, 2019 WL 6271539 (2d Cir. Nov. 25, 2019). Accordingly, the Court should impose a guideline-range sentence in this case.

**B. THE DEFENDANT IS SEXUALLY ATTRACTED TO CHILDREN.**

"An offender's pornography and erotica collection is the single best indicator of what he wants to do." Kenneth V. Lanning, Office of Juvenile Justice & Delinquency Prevention, *Child Molesters: A Behavioral Analysis-For Professionals Investigating the Sexual Exploitation of Children*, 107 (5th ed. 2010).

The defendant is, unquestionably, sexually attracted to children. He spent at least three years exploring the most violent child pornography to exist. He admitted to being attracted to children as young as 13. He admitted to masturbating to child pornography. Although he denied being aroused by child pornography depicting younger children, it strains credulity to believe that he viewed such images without a sexual interest in the content.

As such, the government believes the defendant not only presents a serious risk to reoffend, but also to sexually abuse a child. One study, titled, "Child Pornography Offenses Are a Valid Diagnostic Indicator of Pedophilia," conducted by Michael C. Seto, James M. Cantor, and Ray Blanchard, involved 685 male patients treated for illegally or clinically significant sexual behaviors at the Kurt Freund Laboratory of the Centre for Addiction and Mental Health in Toronto, Ontario. Relying primarily upon phallometric assessments of each of the patient's sexual interests, the study found that child pornography offenders showed greater sexual arousal to children than to adults, differing in this regard from other sexual offenders.

While only one study, this finding suggests that child pornography offenses are perhaps a stronger diagnostic indicator of pedophilia than is the actual commission of a contact offense against a child. The finding is consistent with common sense: of all of the things that a person could collect, perverse or otherwise, one's repetitive decisions to collect images of children engaged in sexually explicit conduct are a better indicator of that person's sexual preferences than a single incident of hands-on offending that could have been triggered more by opportunity than sexual preference.

The defendant's hired forensic evaluation asserts that the defendant presents a "low risk to continue to engage in similar behavior or to initiate any type of contact with a minor for purposes of sexual contact." Dr. Cervantes does so, however, by stating that the defendant "did not report distinguishable characteristics that would be considered atypical regarding sexual arousal within the criteria that relate to the 8 paraphilic disorders in the DSM-5 including exhibitionism, voyeuristic, frotteuristic, sexual masochism/sadism, fetishistic, transvestic, and pedophilic disorders." Such a statement belies the facts of this case — which the defendant has admitted — namely, that the defendant possessed over 13,000 images of child pornography, viewed more images than he possessed, and masturbated to violent child pornography over a period of three years. The statement also undercuts the fact that the defendant told Dr. Cervantes that "his age preference for sexual videos that were arousing to him involved seeing children between the ages of 12 and 16." Dr. Cervantes seemingly excuses the defendant's conduct in stating that "[g]iven his lengthy, untreated history of schizophrenia, which included numerous delusional beliefs about religion and his own destiny and distorted perceptions, it is not difficult to see how [the defendant] would have been curious and attracted to material that is on the Dark Web." Dr. Cervantes went on to

assert that "[h]is social isolation and relative absence of responsibilities and other activities to devote time to contributed to him spending vast amounts of time on the internet and consequently on the Dark Web, where he eventually became exposed to child porn." Dr. Cervantes seemingly shifts the blame to the Dark Web for "exposing" the defendant to child pornography, as if he saw one image and never looked again. In reality, of course, the defendant spent years viewing child pornography.

In comparison, Dr. Watkin's evaluation asserted that the defendant's "current charges are suggestive of a pattern of sexual interest in children," citing the fact that the defendant "admitted to investigators that he masturbated to the images he viewed of child pornography with infant to prepubescent children, and he disclosed to this examiner that he viewed such images, along with other content, for several years." *See* Exhibit A at 15. Dr. Watkins noted that a "diagnosis of Pedophilic Disorder requires a pattern of recurrent (over a period of six months or greater, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years of younger)." Because the defendant did not admit a preferential interest in children during that evaluation and had not yet entered a plea to the charges in the case, Dr. Watkins offered a rule-out pedophilic disorder at the time to reflect the need for further evaluation.

As the defendant's offense conduct, statements to law enforcement, statements to several mental health professionals, and his voluminous child pornography collection all demonstrate, the defendant has an intense sexual interest in children. Accordingly, the Court should impose a guideline-range sentence in this case.

## C. THE DEFENDANT'S BACKGROUND AND CHARACTERISTICS SUPPORT A GUIDELINE SENTENCE.

The defendant devotes most of his sentencing memorandum to his background and characteristics. In particular, the defendant states that he "suffers from [a] severe psychiatric illness and was not being treated at the time he committed these crimes." As such, the defendant contends that "[h]e should not be punished with the same severity that a healthy person committing similar crimes should be." Docket No. 67 at 6. The defendant is wrong.

While the court may vary downward based on defendant's mental health consideration, such a variance is not mandated. Furthermore, Guideline sentences imposed by numerous other Circuits who declined to vary downwards based on mental health conditions were affirmed by the Circuit Courts as substantively reasonable. *See generally United States v. Smart-El*, No. 10-3559, 412 Fed. Appx. 551, 2011 WL 477535 (3rd Cir. Feb. 11,2011) (unpublished) (finding within Guideline range sentence as reasonable even though district court declined to vary downward based on defendant's mental diagnosis as schizophrenic catatonic); *United States v. Mills*, No. 08-4517, 364 Fed. Appx. 217, 2010 WL 395919 (6th Cir. Feb. 4, 201)(unpublished) (finding substantively reasonable, court's decision to deny defendant both a downward departure or a downward variance based on defendant's mental illness and sentencing defendant to a mid-Guideline range sentence); *United States v. Washington*, No. 10-10445, 417 Fed. Appx. 402, 2011 WL 832134 (5th Cir. March 10, 2011) (unpublished) (Guideline sentence was not unreasonable even though court declined to vary downward for defendant's mental health condition); *United States v. Farmer*, 647 F.3d 1175, 1177-78 (8th Cir. 2011) (where the court took defendant's mental condition into consideration

as a mitigating factor and sentenced defendant to the low-end of the Guideline range, but did not vary downward).

To be certain, the defendant suffers from mental illness. There is, however, no direct link between his mental illness and his crime warranting a downward departure. Nor has the defense or Dr. Cervantes drawn such a link. Indeed, Dr. Robin Watkins assessed, as part of his insanity evaluation, that "[t]he domains of this instrument, as applied to the defendant, are indicative of criminal responsibility at the time of the alleged offenses." Dr. Watkins continued that "[t]he defendant's reported and self-described behavior were highly consistent with an awareness of the wrongfulness or criminality of his actions." *See* Exhibit A at 25. Dr. Watkins further opined that:

> There appeared to be significant planning involved in the alleged offense behavior, including downloading the Tor browser on multiple devices and taking multiple steps to access where he found child pornography. . . . [the defendant] appears to have taken measures to conceal his activities, as he stated he did not tell his roommates about it, and they did not appear be aware of it. During his statement to authorities, he made potentially self-protective statements (e.g., he stated he 'lost' a thumb drive containing child pornography and escribed the child pornography as just part of a larger foundation of files). These behaviors suggest he understood he could be apprehended and charged for his actions. Moreover, [the defendant] explicitly stated on multiple occasions during the present evaluation that he was fully aware of the wrongfulness and criminality of his actions.

Exhibit A at 25.

Finally, Dr. Watkins stated that "despite the presence of a personality disorder, there is no evidence that [the defendant] met criteria for an acute mood or psychotic disorder at that time. Although he described somewhat unconventional beliefs about aliens which could be related to his Schizotypal Personality Disorder, *his seeking of evidence of aliens does not appear*

*related to seeking, downloading, viewing, saving, and masturbating to child pornography.*" *Id.* (emphasis added).

Dr. Cervantes does not address this portion of Dr. Watkins's report. Regardless, the defendant told Dr. Cervantes that he "was aware that already being in this type of network was bad, but he stated he spent a lot of time on it because he had a lot of curiosity over what was being posted and he was relatively socially isolated otherwise." For her part, and in seeming contradiction to Dr. Watkins, Dr. Cervantes concluded that the defendant was "likely in a psychotic state for much of that time when he was browsing and downloading this material," which would have been at least three years. Dr. Cervantes's conclusion is undercut by the defendant's own admissions that he knew what he was doing was wrong.

Put simply, that the defendant suffers from mental illness does not excuse his conduct in this case. Nor does it entitle him to a sentence of time served. Millions of Americans suffer from mental illness, including schizophrenia, who do not turn to child pornography for sexual gratification. While consideration of the intersection of defendant's mental health issues is appropriate, the Court can address those considerations through a sentence within the advisory guidelines range. Defendant's mental conditions do not warrant a downward variance. Defendant's words and actions make clear that he has a sexually deviant interest in minors. Treatment of that condition may be complicated by his mental illness. A sentence within the guideline range, however, will assure a lengthy separation from children and the Internet. It will give the defendant an opportunity for reflection and treatment in a structured setting, separated from young children and the Internet. Treatment issues can be addressed initially in the Bureau of Prisons and later as conditions of supervised release.

In sum, defendant's history and characteristics merit a significant prison sentence. Defendant's mental health presents challenges to his ability to socialize with others and navigate complex situations. His mental illness, however, did not cause the defendant to be sexually attracted to children. There is no evidence to support a direct nexus between schizophrenia and criminal activity, let alone a sexual attraction to minors. Accordingly, defendant's mental illness does warrant a downward departure, particularly one where the defendant receives a sentence of time served.

## D. THE COURT SHOULD IMPOSE A GUIDELINE RANGE SENTENCE TO PROTECT THE PUBLIC.

Courts must balance the need to minimize recidivism and thus protect society with the need to consider mental health issues as mitigating factors. The defendant's psychological evaluations are consistent inasmuch as both find that the defendant has a long history of socially unconventional behavior and limited social engagement with others. The evaluations are also consistent in that they demonstrate the defendant's resistance to treatment over time. Although the defendant states that he "is committed to never deviating from his doctor's recommendations again," there is no guarantee that he will remain in treatment and on medication. In fact, Dr. Cervantes even noted that "[i]nsight into his legal situation was fair, however he had limited insight into his need for treatment as he continued to deny he had any major illness." There is also no guarantee that treatment and medication will suppress his demonstrated sexual interest and predilection towards children. Although Dr. Cervantes considers the defendant "at low risk to continue to engage in similar behavior or to initiative any type of contact with a minor for purposes of sexual contact," she renders this opinion with no further explanation, undermining its validity. In fact, the government submits that defendant's difficulty in identifying social norms and rules as they relate to sexual activity

with minors aggravates the risk he presents to the community as opposed to minimizing it. This is particularly true given the defendant's complicated, if not conflicting, religious views regarding his sexuality.

Further, the government submits that the BOP can adequately address the needs of an inmate diagnosed with mental health issues. The BOP offers general psychology services as well as a number of occupational therapy programs (where necessary) to assist an inmate in adjustment and coping. BOP's providers are more than capable of managing individuals with schizophrenia. There is no reason that someone suffering from this or other mental health conditions could not be suitably housed in the BOP. In addition, rather than justifying a downward variance based on mental health issues, this court can request that the BOP take defendant's mental health into consideration in the type of facility and services available to the defendant upon imposition of the sentence. *See United States v. McCarty*, 628 F.3d 284, 294-95 (6th Cir. 2010) (where the court did not vary downward but considered defendant's mental health in imposing the sentence and requested that the BOP institutionalize defendant in a location where defendant could receive treatment).

A sentence within the guideline range, at the high end, reinforces to the defendant, and to others who are tempted to follow in his footsteps, that this crime is exceedingly grave in nature, thereby promoting respect for the law, providing just punishment, and deterring criminal conduct. A guideline sentence will protect the public from further crimes of the defendant.

## CONCLUSION

Possession of child sexual abuse material is a crime of violence and it **must** be treated as such with the imposition of harsh penalties. As the Supreme Court recognized, "[t]he most

expeditious if not the only practical method of law enforcement may be to dry up the market for [child sexual abuse material] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product." *United States v. Ferber*, 458 U.S. 747, 760 (1982). Accordingly, the government urges that a guideline sentence is appropriate in this case.

DATED: Buffalo, New York, February 2, 2022.

TRINI E. ROSS
United States Attorney

BY: /s Caitlin M. Higgins

CAITLIN M. HIGGINS
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5818
Caitlin.Higgins@usdoj.gov