IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

              v.                                                        21-CR-118-LJV

BRANDON KIDDER,

               Defendant.

_____

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF VICTIM RESTITUTION

      **THE UNITED STATES OF AMERICA**, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, and Laura A. Higgins, Assistant United States Attorney, files this memorandum in support of the victims' requests for restitution.  The government respectfully requests that the Court order the defendant to pay restitution to the victims in the amounts requested, or at least $3,000 per victim, as mandated by statute.

### PRELIMINARY STATEMENT

      The Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 ("AVAA"), Public Law 115-299, enacted on December 7, 2018, created new penalties and made a number of changes to existing child pornography laws, specifically with regard to restitution.  As amended by the AVAA, 18 U.S.C. 2259 now states, in relevant part:

> If the defendant was convicted of trafficking in child pornography, the court shall order restitution under this section in an amount to be determined by the court as follows:
>
> (A) Determining the full amount of a victim's losses.—
> The court shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim.

(B) Determining a restitution amount.
After completing the determination required under subparagraph (A), the court shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000.

(C) Termination of payment.—
A victim's total aggregate recovery pursuant to this section shall not exceed the full amount of the victim's demonstrated losses. After the victim has received restitution in the full amount of the victim's losses as measured by the greatest amount of such losses found in any case involving that victim that has resulted in a final restitution order under this section, the liability of each defendant who is or has been ordered to pay restitution for such losses to that victim shall be terminated.  The court may require the victim to provide information concerning the amount of restitution the victim has been paid in other cases for the same losses.

Consistent with 18 U.S.C. § 2259, the government requests that the Court order the defendant to pay $3,000 to each victim seeking restitution in this case.

## FACTUAL BACKGROUND

On August 9, 2021, the defendant pleaded guilty to a one-count information charging him with violating 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography).  *See* Docket No. 55.  Consistent with his plea agreement, the defendant admitted to possessing more than 600 images of child pornography.  *Id.*  On March 10, 2022, this Court sentenced the defendant to a term of 72-months imprisonment and 25-years supervised release.  *See* Docket No. 76. The Court, however, held the question of restitution in abeyance and asked the parties for briefing on the issue.  The government submits this motion requesting that the Court, consistent with 18 U.S.C. § 2259, order the defendant to pay each victim who submitted a restitution request no less than $3,000.

**ARGUMENT**

I.   **18 U.S.C. § 2259 MANDATES THAT DISTRICT COURTS ORDER RESTITUTION IN AN AMOUNT OF NO LESS THAN $3,000.**

In child pornography cases, the Court <u>must</u> order restitution to any person "harmed as a result of" a defendant's crime pursuant to 18 U.S.C. § 2259. *See* 18 U.S.C. § 2259(a), (c); *see also United States v. Monzel*, 930 F.3d 470, 476 (D.C. Cir. 2019); *United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015) ("Pursuant to 18 U.S.C. § 2259, the victims of certain federal crimes, including possession of child pornography, are entitled to mandatory restitution."). Restitution includes "the full amount of the victim's losses," which may include any costs incurred by the victim for:

(A) Medical services relating to physical, psychiatric, or psychological care;

(B) Physical and occupational therapy or rehabilitation;

(C) Necessary transportation, temporary housing, and child care expenses;

(D) Lost income;

(E) Attorneys' fees, as well as other costs incurred; and

(F) Any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(a), (b)(3); *see also Hite*, 113 F. Supp. 3d at 94.

Prior to December 2018, district courts grappling with determining a restitution amount turned to *Paroline v. United States*, 134 S. Ct. 1740 (2014) for guidance. There, the Supreme Court faced a circuit split over the interpretation of 18 U.S.C. § 2259, specifically over "how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse appears in the pornographic materials possessed." *Paroline*, 134 S. Ct. at 1716. In *Paroline*, the defendant possessed two images of the victim who was seeking restitution. The Court promulgated a three-step approach to answering this question:

First, the Court held that because the statute defined a "victim" as someone "harmed as a result" of the offense, restitution under § 2259 was proper "only to the extent the defendant's offense proximately caused a victim's losses." *Id*. at 1722.

Second, the Court held that "proximate cause" under § 2259 did not require strict but-for causation.  *Id*. at 1726-27.   Recognizing that under the circumstances of most child pornography possession cases – where losses resulted from harm caused by the trafficking of a victim's images by numerous "geographically and temporally distant offenders acting independently, and with whom the defendant had no contact," *id*. at 1725, – the Court held:

> In this special context, where it can be shown that a defendant possessed a victim's images and that a victim had outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id*. at 1727.  The Court stated that where the victim's losses are "the product of the acts of thousands of offenders," a restitution order should not be "too severe" but must not be merely "a token or nominal amount."  *Id*.  The Court rooted its rationale, in part, in the notion that a restitution order under § 2259 serves "twin goals," the first being to "help[] the victim achieve eventual restitution for all her child-pornography losses" and second to "impress[] upon offenders the fact that child pornography crimes, even simple possession, affect real victims."  *Id*.

Third, the Court provided sentencing courts the following guidance for how to determine the proper amount of restitution under this standard.  *Id*.  The Court noted that a sentencing court's goal should be to assess "the significance of the individual defendant's

conduct in light of the broader causal process that produced the victim's losses," taking into account any "available evidence." *Id*. at 1727-28. The Court emphasized that there is no "precise mathematical inquiry" governing this determination and that district courts must exercise "discretion and sound judgment" in fashioning restitution awards. *Id*. at 1728. Moreover, the Court suggested several factors to be considered, including: (1) the number of defendants convicted of possessing the victim's images; (2) the number of future offenders likely to be caught and convicted; (3) whether the defendant had any role in the initial production of the images; (4) whether the defendant reproduced or distributed the images; (5) how many images the defendant possessed; and (6) "other facts relevant to the defendant's relative causal role." *Id*. "These factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. They should rather serve as rough guideposts for determining an amount that fits the offense." *Id*.

In December 2018, however, Congress amended 18 U.S.C. § 2259 to both codify *Paroline*'s basic approach and to set a restitution floor of $3,000. *See* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299, 132 Stat. 4383 (2018). In doing so, Congress made certain findings establishing *per se* harm stemming from child pornography offenses. Those findings included the following:

> (1)  The demand for child pornography harms children because it drives production, which involves severe child sexual abuse and exploitation.

> (2)  The harms caused by child pornography begin, but do not end, with child sex assault because child pornography is a permanent record of that abuse and trafficking in those images compounds the harm to the child.

> (3)  In *Paroline v. United States* (2014), the Supreme Court recognized that "every viewing of child pornography is a repetition of the victim's abuse."

5

(4)  The American Professional Society on the Abuse of Children has stated that for victims of child pornography, "the sexual abuse of the child, the memorialization of that abuse which becomes child pornography, and its subsequent distribution and viewing become psychologically intertwined and each compound the harm suffered by the child-victim."

(5)  Victims suffer continuing and grievous harm as a result of knowing that a large, indeterminate number of individuals have viewed and will in the future view images of their childhood sexual abuse.  Harms of this sort are a major reason that child pornography is outlawed.

(6)  The unlawful collective conduct of every individual who reproduces, distributes, or possesses the images of a victim's childhood sexual abuse plays a part in sustaining and aggravating the harms to that individual victim.

(7)  It is the intent of Congress that victims of child pornography be compensated for the harms resulting from every perpetrator who contributes to their anguish.  Such an aggregate causation standard reflects the nature of child pornography and the unique ways that it actually harms victims.

Pub.L. 115-299 , § 2, Dec. 7, 2018, 132 Stat. 4383.  By making these findings, and requiring a $3,000 statutory minimum restitution payment, Congress built a presumption of harm into the statute, removing the onus from the victims to establish that any one defendant viewing their images contributed to their harm.  Rather, if victims feel that a certain defendant contributed more egregiously to their harm, they can make that showing, consistent with *Paroline*, and request a restitution amount higher than $3,000.  District courts, then, must follow *Paroline* to determine whether a defendant must pay an amount higher than $3,000.

*United States v. Clemens*, 990 F.3d 1127 (8th Cir. 2021) illustrates the post-December 2018 amendment landscape well.  There, the defendant argued that "(i) that $3,000 exceeds the full amount Clemens can be responsible for because all but $800 of the claimed losses occurred before he committed his child pornography trafficking offense, and (ii) the district

6

court failed to 'disaggregate' the losses caused by his possession and use of Tara's images from

the damages caused by their initial production, a 'complication' the Supreme Court noted but

'set aside' in *Paroline*." *Id.* at 1130.   The Eighth Circuit, however, rejected the defendant's

arguments, holding:

> We reject both these arguments because they are contrary to the
> plain meaning of § 2259 as amended.   The statute now explicitly
> defines "the full amount of the victim's losses" as the losses
> "incurred . . . or projected to be incurred . . . *as a result of the
> trafficking in child pornography depicting the victim*," not just the
> losses Clemens can be responsible for.   § 2259(b)(2)(A) (emphasis
> added).   After determining that amount, the amended statute
> directs that the court "shall order" restitution "in an amount that
> reflects the defendant's relative role . . . but which is no less than
> $3,000," so long as the victim's "total aggregate recovery" does
> not exceed her losses.   § 2259(b)(2)(B)-(C).   Clemens did not
> refute the government's detailed evidence that Tara has incurred
> more than $3,000 in total losses resulting from trafficking her
> images, and there is no evidence her "total aggregate recovery"
> has exceeded her total losses.   Thus, on this record, the district
> court did not err in imposing the mandatory minimum
> restitution award.   The *Paroline* factors no doubt remain relevant
> in determining whether a defendant's "relative role in the causal
> process" supports an award of more than $3,000 under amended
> § 2259(b)(2)(B).   In such a case, how to determine the defendant's
> "relative role" and whether disaggregation applies to this
> determination under the amended statute are questions we leave
> for another day.

*Id.* (emphasis in original).

In essence, through the amended statute, Congress directs "district courts to use a two-

step method to determine the restitution amounts for defendants found trafficking in child

pornography.   It directs that 'court[s] shall determine the full amount of the victim's losses

that were incurred or are reasonably projected to be incurred by the victim as a result of the

trafficking in child pornography depicting the victim.' § 2259(b)(2)(A).   After that, 'the court

shall order restitution in an amount that reflects the defendant's relative role in the causal

process that underlies the victim's losses, but which is no less than $3,000.' *Id.* § 2259(b)(2)(B)." *United States v. Jones*, 815 F. App'x 870, 883 (6th Cir.), cert. denied, 141 S. Ct. 833, 208 L. Ed. 2d 409 (2020).

Here, the offense of conviction, possession of child pornography, constitutes a child pornography trafficking offense as defined in 18 U.S.C. § 2259(c)(3). Therefore, the Court shall determine the full amount of the victim's losses and shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is not less than $3,000. *See* 18 U.S.C. § 2259(b)(2).

In this case, fourteen victims submitted restitution requests, as summarized by the chart below.

| VICTIM | REQUESTED AMOUNT | TOTAL AGGREGATE LOSS | TOTAL AGGREGATE RECOVERY |
|---|---|---|---|
| Amy | At least $3,000 | $8,886,300 | $2,179,633.12 |
| Andy (Sponge Bob) | $58,415 | $2,121,963 | $549,972 |
| Angela | $12,000 | $1,616,420.00 | $772,295.00* |
| Anna (Middle Model Sister) | $3,000 | $7,067,511 | $47,856.63 |
| Henley (Blue Pillow) | *Request Withdrawn*[1] | | |
| Chelsea (2crazygurls) | $10,000 | $276,375.00 | $213,086.00* |
| Cindy | $8,000 | $1,668,232.47 | $1,134,396.84 |
| Sierra (Jan-Socks) | $10,000 | $1,155,509 | $221,999 |
| Jenny | At least $3,000 | $3,785,296 | $488,542 |
| Jessica | At least $3,000 | $3,802,119 | $262,174.15 |
| Maureen (Light House) | $10,000 | $1,233,250 | $216,143.19 |
| Marineland1 | $10,000 | $2,758,335 | $1,049,289 |
| Sweet White Sugar | $5,000 | $1,700,000 | $469,717.79 |
| Vicky | $10,000 | $6,008,536 | $2,394,787 |

*Attorney and expert fees are not deducted

[1] On May 5, 2022, AUSA Laura Higgins spoke with Deborah Bianco, Esq., the attorney for the victim, and learned that the total aggregate losses for Henley (Blue Pillow) have not been determined as they are pending a vocational evaluation. Accordingly, the government cannot present the "total aggregate losses" for this victim as required by statute. Ms. Bianco agreed that without a demonstration of the total aggregate losses, the Court cannot order restitution for Henley (Blue Pillow) and so agreed to withdrawn the restitution request on behalf of Henley (Blue Pillow).

## <u>CONCLUSION</u>

The government respectfully requests that the Court order the defendant to pay restitution to the victims in the amounts requested, or at least $3,000 per victim, as mandated by statute.


DATED:  Buffalo, New York, May 13, 2022.


TRINI E. ROSS
United States Attorney


BY:    s/LAURA A. HIGGINS
       Assistant United States Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York  14202
       716/843-5862
       Laura.Higgins@usdoj.gov